**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | ) | |
| BIJAN OUGHATIYAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 09 CV 5418 |
| v. | ) | |
| | ) | Honorable Joan H. Lefkow |
| IPC THE HOSPITALIST COMPANY, INC., a | ) | |
| California corporation; *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO
DISMISS OR, IN THE ALTERNATIVE, TO SEVER CLAIMS AGAINST THE
DEFENDANTS**</u>

Defendants IPC The Hospitalist Company, Inc.; IPC Hospitalists of Colorado, Inc.; IPC

The Hospitalist Management Company, LLC; Inpatient Consultants of Alabama, Inc.; Inpatient

Consultants of Delaware, Inc., d/b/a IPC of Delaware; Inpatient Consultants of Florida, Inc.,

d/b/a IPC of Florida and IPC of Florida Inc.; Hospitalists of Kentucky, Inc.; Inpatient

Consultants of Missouri Inc., d/b/a IPC of Missouri; Inpatient Consultants of Mississippi, Inc.;

Inpatient Consultants of Utah, Inc., d/b/a IPC of Utah; Hospitalists of California, LLC;

Hospitalists Management of New Hampshire, Inc.; Hospitalists of Arizona, Inc. (d/b/a

Hospitalists of Arizona and InPatient Consultants of Arizona); Hospitalists of Illinois, Inc.;

Hospitalists of Georgia, Inc.; Hospitalists of Maryland, Inc.; Hospitalists of Michigan, Inc.;

Hospitalists of North Carolina, Inc.; Hospitalists of Nevada, Inc.; Hospitalists of Ohio, Inc.;

Hospitalists of Pennsylvania, Inc.; Hospitalists of South Carolina, Inc.; Hospitalists of

Tennessee, Inc.; Hospitalists of Texas, L.P.; Hospitalist Services of Florida, Inc.; Inpatient

Consultants of Wyoming, LLC (d/b/a IPC of Wyoming, LLC); Inpatient Consultants of

California, Inc.; IPC Hospitalists of New Mexico, Inc.; IPC Management Consultants of New York, Inc.; and Hospitalist Management Consultants of New York, Inc. (collectively referred to as "Defendants") respectfully request the Court to dismiss the Complaint in Intervention (the "Complaint") filed by the United States of America, *ex rel.* Bijan Oughatiyan (the "Intervener") with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for the reasons set forth herein. In the alternative, Defendants respectfully request that this Court sever claims against the Defendants pursuant to Federal Rule of Civil Procedure 21.

## I.    <u>INTRODUCTION</u>

The Intervener's sprawling, 257-paragraph Complaint challenges the conduct of 30 separate and distinct entities that provide, through nearly 300 physician practice groups, high quality medical services to patients in various hospitals and medical facilities throughout the United States. At the heart of the Complaint is the Intervener's allegation that these 30 Defendants participated in a fraudulent scheme to bill federal payors, including Medicare and Medicaid, for higher and more expensive levels of medical service than were actually performed in violation of the False Claims Act. The Complaint is devoid, however, of any explanation as to how, *if at all*, these 30 Defendants were involved in this alleged scheme. Indeed, although the Complaint is voluminous, the insufficiency of the Intervener's sparse allegations against Defendants is readily apparent, and the Complaint should be dismissed.

*First*, the Complaint should be dismissed as to all Defendants because the claims are far too conclusory to stand: each of the Defendants' supposed participation in the purported scheme is not even alleged with plausibility, let alone with the particularity that is required by the False Claims Act. Indeed, the Intervener fails to allege the "who," the "where," and the "how" particulars required by Rule 9(b).

2

*Second*, the Complaint should be dismissed as to all Defendants because the Intervener does not plausibly allege any facts suggesting that each of the Defendants had *any* involvement in the conduct alleged in the Complaint or the scienter to be held liable for False Claims Act violations. Instead, the Intervener simply identifies a group of entities that are affiliated with Defendant IPC The Hospitalist Company, Inc., and alleges, without any supporting facts whatsoever, that *all* of the entities somehow participated in an unlawful scheme and that *all* of the entities had the requisite scienter. The Intervener's bare assertions and legal conclusions, and the wholesale lumping of 30 Defendants into one undifferentiated mass, falls far short of the applicable standards for pleading a claim against these Defendants.

*Third*, the Complaint should be dismissed because the Intervener lacks standing. It does not allege any injury that is fairly traceable to the conduct of any of the Defendants.

*Fourth*, and in the alternative, the claims against the Defendants should be severed because the claims against each of the Defendants do not arise out of the same transaction, occurrence, or series of transactions or occurrences.

Because the Intervener has had ample time and opportunity to try to state a valid claim against Defendants — indeed, Relator Bijan Oughatiyan's complaint was filed nearly five years ago — the Complaint should be dismissed against Defendants with prejudice.

## II.     BACKGROUND

IPC The Hospitalist Company, Inc. is a leading provider of hospital medicine and related facility-based services. *See* Compl. at ¶ 6. It has subsidiaries or affiliate medical practice groups organized in their respective states that provide medical services to patients in various facilities (mostly hospitals) throughout the United States. *Id.* at ¶ 16 (identifying 28 states). Hospitalists

are acute-care medical professional specialists; their primary focus is on the medical care of hospitalized patients from the time of the patient's admission to discharge. *Id.* at ¶ 6.

On September 1, 2009, Relator Bijan Oughatiyan, a former employee of non-defendant InPatient Consultants of Texas, PLLC, filed a complaint against IPC The Hospitalist Company, Inc. and numerous subsidiaries, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (the "FCA") and various state laws. *See* Dkt. No. 1 at ¶¶ 1, 192-323. On December 3, 2013, the thirteen putative state plaintiffs, including Illinois, notified this Court of their decision to decline to intervene in this action. *See* Dkt. No. 19.

On June 16, 2014, the Intervener filed its Complaint against 30 Defendants, including IPC The Hospitalist Company, Inc., IPC The Hospitalist Management Company, LLC, and subsidiaries located in 25 states. *See* Compl., Dkt. No. 48, at ¶¶ 16-45. In conclusory fashion, the Intervener alleges that "IPC The Hospitalist Company, Inc. and its affiliates and subsidiaries . . . knowingly and systematically" billed certain federal payors for higher and more expensive levels of medical service than were actually performed. *See id.* at ¶ 5.

Apart from this conclusory assertion, the Complaint is devoid of any facts about the actions of *any* individual defendant and instead simply lumps all Defendants together as "IPC." *Id.* at ¶ 5 (defining "IPC" as "IPC The Hospitalist Company, Inc. and its affiliates and subsidiaries named below (collectively, IPC)"). Indeed, 29 of the 30 defendants, which according to the Complaint represents nearly 300 physician practice groups (*id.* at ¶ 70), are mentioned only **once** in the entire 82-page, 257-paragraph Complaint. The **sole** "facts" the Intervener pleads against these 29 defendants is that each is "a subsidiary of IPC The Hospitalist Company, Inc. that employs hospitalists." *Id.* at ¶¶ 17-45. The Complaint says nothing about

the actions of these Defendants and provides no explanation whatsoever as to how, if at all, these Defendants were involved in the alleged scheme.

Indeed, the only allegations that are pleaded with any kind of specificity relate to services allegedly performed by hospitalists in one state — Texas. *See, e.g.*, *id.* at ¶¶ 135-149. The Intervener alleges that certain hospitalists in San Antonio, Texas inappropriately billed "Medicare, Medicaid and other federal payors" for services at the highest level. *See id.* at ¶¶ 195-208, 215-219, 220-224, 229-232. However, the Intervener uses this allegation to bootstrap its claim that "IPC" (*i.e.*, apparently all 30 Defendants located in various states) should have known about such billing practices because TrailBlazer Health Enterprises, LLC, which served as the Medicare Administrative Contractor for the state of Texas, issued audit and education letters to certain hospitalists who practiced in Texas. *Id.* at ¶¶ 136, 144, 147. The remainder of the Intervener's allegations against Defendants fail to specify in which city, state, or region the allegedly improper conduct occurred, which Defendants allegedly were responsible for submitting allegedly false claims to the government for payment, where those allegedly false claims were submitted for payment, and which Defendants had knowledge of allegedly false claims. *See, e.g.*, *id.* at ¶¶ 118-129, 153, 157, 161, 209-214, 225-228, 233, 236, 241.

Based upon these allegations, the Intervener seeks to recover civil penalties and treble damages for violations of the FCA against all 30 Defendants. *Id.* at ¶¶ 1, 244-250. The Intervener specifically alleges violations of 31 U.S.C. §§ 3729(a)(1)(A) and (B)[1] which penalize "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." The Intervener also seeks to recover

---

[1] On May 20, 2009, Congress amended the FCA by enacting the Fraud Enforcement and Recovery Act ("FERA"). FERA re-designated 31 U.S.C. § 3729(a)(1) as 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(2) as 31 U.S.C. § 3729(a)(1)(B), among other amendments. *See* Pub. L. No. 111-21, 123 Stat. 1617, 1621 (2009).

damages under common law theories of unjust enrichment and payment by mistake. Compl. at ¶¶ 251-257.

### III.   <u>LEGAL STANDARDS</u>

To survive a motion to dismiss, the Intervener must allege facts that, if accepted as true, are sufficient to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard is met only by *factual* allegations that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In this case, the Intervener must meet an even higher pleading standard than plausibility under *Iqbal* and *Twombly*. Because it asserts claims under the FCA, which is an anti-fraud statute, the Intervener's claims must meet the heightened pleading standard required under Rule 9(b). *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard requires "more than the usual investigation" before filing suit. *United States ex rel. Walner v. NorthShore University Healthsystem*, 660 F. Supp. 2d 891, 895 (N.D. Ill. 2009) (citation omitted). Specifically, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is . . . supported." *Id.* (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).

In the Seventh Circuit, a complaint for fraud must specify the "who, what, when, where, and how" of the alleged fraud. *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d

6

849, 853 (7th Cir. 2009) (quotation omitted). Thus, a plaintiff must identify (1) specific false claims for payment, (2) who submitted the claim, (3) when the claim was submitted, (4) where the claim was submitted, (5) how the claim was submitted, and significantly, how the defendant caused the claim to be submitted. *United States v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *3, 5 (N.D. Ill. July 20, 2007), attached as Exh. A hereto (holding that the complaint was insufficient because it lacked any "concrete examples of false statements and false claims").

## IV.   THE COMPLAINT FAILS TO PLEAD WITH THE PARTICULARITY REQUIRED BY RULE 9(b)

### A.   The Intervener Fails to Plead Essential Elements of the Alleged Fraud

The Intervener's Complaint does not meet the Rule 9(b) particularity standard because it fails to adequately plead three essential elements: (1) *"who"* was involved in the allegedly fraudulent conduct; (2) *"where"* the allegedly fraudulent conduct occurred; and (3) *"how"* the allegedly fraudulent conduct occurred. *See Lusby*, 570 F.3d at 853.

*First*, the Complaint fails to adequately plead *who* submitted the allegedly fraudulent claims to the government. Although the Complaint includes charts of claims, which include dates, codes, and amounts paid (Compl. at ¶¶ 153, 157, 161), the Complaint fails to indicate *who* made these claims — namely, which one of the 30 Defendants identified in the Intervener's Complaint, if any, submitted these claims for reimbursement to federal payors. Rule 9(b) requires the Intervener to allege which Defendant(s), if any, made the claims at issue in the Complaint, but the Intervener fails to do so. *See Lusby*, 570 F.3d at 853.

Having failed to allege which Defendant, if any, submitted the claims, the Intervener cannot show a pattern of upcoding across all 30 Defendants or particular Defendants in the case. *See United States ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1051

(N.D. Ill. 2002) (dismissing allegations of upcoding where there was "nothing in the complaint to suggest a pattern of upcoding"). Because information regarding who submitted the allegedly fraudulent claims to the government is lacking, the Complaint should be dismissed pursuant to Rule 9(b).

*Second*, the Complaint fails to properly plead **where** the allegedly fraudulent claims were submitted. The Intervener alleges that certain hospitalists, who were new to working for one (or more) of the Defendants, increased their use of higher billing codes over time. *See* Compl. at ¶¶ 117-129 (Drs. Sternaman, Steele, Uribe, Mathai, and Meza). However, the Complaint fails to allege where these hospitalists practiced — *i.e.*, in which state and for which one of the 30 Defendants — or where the bills were submitted. The Complaint fails to specify if any or all of the alleged inflated claims by these five hospitalists, for example, were submitted to Medicare, Medicaid or some other federal healthcare program. Indeed, these claims may not have been federal claims at all.

Similarly, the Intervener alleges that certain hospitalists billed for services that would have taken more than 24 hours to complete, but carefully omits any reference to which one of the 30 Defendants employed these hospitalists or to which third party payor these services were billed. *See id.* at ¶¶ 209-214, 225-228, 233 (Drs. Ramos, Ozigbo). Finally, the Intervener also alleges certain hospitalists engaged in "excessive billing", but does not identify the locations in which these hospitalists practiced. *See id.* at ¶¶ 236, 241. Having failed to allege where the allegedly fraudulent conduct occurred or to which third-party payor the allegedly fraudulent claims were submitted, the Intervener's allegations are insufficient to meet Rule 9(b)'s heightened pleading standard. *See United States ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007) (stating that a plaintiff must "do more than merely charge

that the defendants engaged in fraudulent schemes and then conclusively assert that fraudulent claims were submitted to the government").

*Third*, the Complaint fails to properly plead **how** the allegedly fraudulent claims were submitted. The Complaint refers to "billing records" of certain hospitalists, but it does not allege that such records resulted in allegedly false claims that actually were submitted to the government for payment. *See, e.g.*, Compl. at ¶¶ 118-132. The Complaint does not allege any specific claims that arose out of these billing practices as required by Rule 9(b). *See United States ex rel. Turner v. Michaelis Jackson & Assocs.*, No. 03-cv-4219-JPG, 2007 WL 496384, at *4 (S.D. Ill. Feb. 13, 2007), attached as Exh. B hereto ("Though the relators have alleged the underlying scheme in detail, they have failed to link these allegations with an actual claim for payment because they have failed to allege specifically that defendants submitted a claim for payment for Patients 1, 2 and 3, the date they submitted the claims, the date Medicare processed them and the amounts Medicare paid."). It is possible that the billing records were adjusted downward before submission to the government. It is also possible that the billing records were never submitted to federal payors, but rather were submitted to commercial payors. Because the Intervener does not link any of the allegedly false billing records to actual claims for payment or to a specific Defendant entity, the Intervener's allegations fail to meet the heightened pleading standard under Rule 9(b).

Because the Complaint does not provide information to identify three of the fundamental elements of pleading under Rule 9(b) — *who* submitted the allegedly fraudulent claims, *where* the allegedly fraudulent claims were submitted, and *how* the allegedly fraudulent claims were submitted — the Complaint fails to satisfy Rule 9(b)'s particularly requirement and should be dismissed.

**B.**     **The Intervener Fails to Plead with Particularity with Respect to Certain Federal Payors**

The Intervener's Complaint also fails under Rule 9(b) because it makes only passing reference to and conclusory allegations regarding non-Medicare government payors, including Medicaid, the Tricare Management Agency ("TRICARE"), the Federal Employees Health Benefits Program ("FEHBP"), and the Railroad Retirement Board ("RRB"). Because the Complaint fails to plead any facts whatsoever with respect to allegedly false specific claims submitted by any of the Defendants to Medicaid, TRICARE, FEHBP, or the RRB (collectively the "non-Medicare government payors"), the Intervener's FCA claims relating to claims submitted to the non-Medicare government payors should be dismissed.

It also is impossible to infer whether the Intervener is asserting that allegedly false claims that may have been submitted by any of the Defendants to the non-Medicare government payors are factually false or whether they are premised on an alleged false certification of compliance with statutory or regulatory requirements as a condition of or prerequisite to government payment. The Complaint does at least allege an express certification requirement to be eligible for payment under Medicare (Compl. at ¶ 50), but the Complaint does not reference any such express certification requirements with respect to the non-Medicare government payors. To the extent that the Intervener is relying on express certifications to allege the falsity of any allegedly false claims submitted by Defendants to non-Medicare government payors, the Complaint must be dismissed because it fails to plead any facts regarding express certification as required by the FCA. *Gross*, 415 F.3d at 604 ("An FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements also requires that the certification of compliance be a condition of or prerequisite to government payment.").

10

## V.  THE INTERVENER IMPROPERLY FAILS TO DIFFERENTIATE BETWEEN THE CONDUCT OF 30 SEPARATE DEFENDANTS

The Intervener's claims against the Defendants also fail because the Intervener simply lumps 30 legally distinct entities together without making any effort to allege Defendant-specific facts against any of the 30 named Defendants.  A "plaintiff is normally not entitled to treat multiple corporate defendants as one entity."  *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994) (citations omitted).  Indeed, the law is clear that an undifferentiated pleading against multiple defendants is improper because it does not provide defendants with fair notice of their alleged misconduct.  *See e.g., Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000) (stating that "[l]umping all of defendants' acts together, adding the word 'conspiracy,' and citing 42 U.S.C. § 1985 adds nothing"); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of plaintiff's complaint with prejudice because "the complaint lump[ed] all the defendants together and [did] not specify who was involved in what activity").

Here, the Intervener acknowledges that the 30 Defendants are legally distinct and separate entities, with different states of incorporation.  *See* Compl. at ¶¶ 16-45.  The ***only*** specific allegation with respect to 29 of the 30 defendants is that they are "subsidiar[ies] of IPC The Hospitalist Company, Inc."  *Id.* at ¶¶ 17-45.  The remainder of the Intervener's allegations simply lump together all 30 Defendants under the name "IPC" (or, in some instances (such as Paragraphs 247, 249 and 250) "Defendants") without attributing any of the alleged wrongful conduct to any particular Defendant.

As an initial matter, it is well-established that Rule 9(b) generally does not allow the lumping together of multiple defendants.  *See, e.g.*, *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (stating that "Rule 9(b) does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one

11

defendant" and upholding decision to dismiss second amended complaint with prejudice because it continued to make "everyone did everything allegations") (citations and internal quotation omitted); *see also Walner*, 660 F. Supp. 2d at 897 (dismissing complaint for violation of the FCA because it failed to plead with the particularity required by Rule 9(b), *inter alia*, "each Defendants [sic] role in the fraud, including but not limited to who submitted the false claim").

Moreover, this shotgun approach is particularly inappropriate in a complaint alleging violations of the FCA that require showings of scienter by each Defendant, and which (according to the Intervener) give rise to joint and several liability for each individual Defendant. The Intervener does not — and, Defendants submit, cannot consistent with Rule 11 — allege that *each separate Defendant* had the requisite scienter to be held jointly and severally liable for the actions of other Defendants. *See* Compl. at ¶¶ 244-250 (seeking that "Defendants" be held "jointly and severally liable" for "knowingly" making false claims and/or statements).

The Intervener's Complaint, which is replete with unsupported conclusions, summarily concludes that "[t]hese billing patterns are the rule — not the exception — at IPC" and that "IPC knew and/or should have known that . . . hospitalists employed by IPC, were engaged in upcoding on a systematic, *nationwide* basis." *See id.* at ¶¶ 242-243 (emphasis added). Yet, nowhere in the Complaint does the Intervener allege that any of the 30 Defendants individually participated in any alleged misconduct, let alone identify how each Defendant and the nearly 300 physician practice groups participated, what each or any did, or how each could purportedly be held jointly and severally liable for the actions of other Defendants.

The Intervener's failure to plead Defendant-specific allegations requires dismissal of all counts of the Intervener's Complaint against the Defendants because the group-pled allegations against "IPC" (as a single entity) pervade the Complaint, thereby making the entire Complaint

12

defective. *See id.* at ¶¶ 244-257. For these reasons, the Intervener's common law claims for unjust enrichment and payment by mistake also fail.

## VI. THE INTERVENER LACKS ARTICLE III STANDING BECAUSE THE INJURY ALLEGED IS NOT FAIRLY TRACEABLE TO THE DEFENDANTS

The Complaint also should be dismissed because the Intervener cannot meet its threshold jurisdictional burden of establishing standing to assert claims against Defendants. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (plaintiff bears the burden of establishing standing).

Standing is an "indispensable part" of a party's case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff has standing if she can plausibly allege, *inter alia*, that her injury is fairly traceable to the challenged conduct of the defendant. *Id.* at 560 (stating that to establish standing, a plaintiff must show "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'") (quotation omitted)).

For the reasons discussed herein, the Intervener's Complaint is woefully deficient and the allegations fail to state a claim under Rule 9(b). In addition, the Intervener does not even allege a causal connection, or relationship, with the Defendants and therefore lacks standing. Indeed, the only specific allegations of allegedly fraudulent billing relate to services which, according to the Intervener's allegations, were performed by hospitalists in Texas. *See* Compl. at ¶¶ 130-132, 195-208, 215-219, 220-224, 229-232. However, the Intervener does not even link these claims to any particular Defendant. Instead, the Intervener uses the allegations to try to bootstrap claims against all Defendants. Yet, the Complaint provides no explanation whatsoever as to how, if at all, any of the Defendants were involved in the alleged scheme. Because the Intervener does not

13

allege any conduct by the Defendants that is fairly traceable to any of its alleged injuries, the Intervener cannot, under these circumstances, meet the standing requirement to allege claims against the Defendants. As such, the Intervener's purported claims should be dismissed with prejudice.

## VII. IN THE ALTERNATIVE, THE CLAIMS AGAINST THE DEFENDANTS SHOULD BE SEVERED

In the alternative, Defendants respectfully request the Court to sever claims against the Defendants pursuant to Federal Rule of Civil Procedure 21 because the Defendants are improperly joined. Rule 20(a)(2) permits multiple defendants to be joined in one action if two criteria are satisfied: "(a) the plaintiffs' claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences, *and* (b) any question of law or fact common to all defendants will arise in the action." *Ramos v. Playtex Prods., Inc.*, Nos. 08 CV 2703, 08 CV 2828, 08 CV 3352, 2008 WL 4066250, at *2 (N.D. Ill. Aug. 27, 2008) (J. Lefkow) (internal quotation omitted), attached as Exh. C hereto. "If either criterion is not present, joinder is not permitted." *Directv, Inc. v. Delaney*, No. 03 C 3444, 2003 WL 24232530, at *4 (N.D. Ill. Nov. 20, 2003), attached as Exh. D hereto. When parties are misjoined, Rule 21 authorizes a court, either on its own or on a motion, to "sever any claim against a party," and to "on just terms, add or drop a party." Fed. R. Civ. P. 21.

Here, the Intervener does not allege that its claims against each of the 30 Defendants "arise out of the same transaction, occurrence, or series of transactions or occurrences." To the contrary, the Complaint alleges the following: (1) hospitalists "submit[ted] records to IPC billing departments claiming higher and more expensive levels of medical service than were actually performed"; (2) these claims were "submitted . . . for payment to Medicare, Medicaid and other federal payors"; and (3) the FCA provides for damages for "knowingly causing the submission

of false or fraudulent claims for payment to the United States, or knowingly using a false record or statement material to get false claims paid by the United States." *See* Compl. at ¶¶ 7-8, 46.

These allegations will necessarily involve inquiries into each record and each claim that was submitted by each of the Defendants. Furthermore, in order to prevail against each Defendant, the Intervener will have to demonstrate that each Defendant had the requisite scienter. The inquiry into each Defendant's records and claims and the resolution of that Defendant's knowledge is entirely independent of the inquiry into the records and claims of every other Defendant and the resolution of every other Defendant's knowledge. Indeed, none of the Defendants are alleged to have acted in connection with any other. As such, the Intervener's claims against the Defendants are "not logically related." *Directv*, 2003 WL 24232530, at *4 (severing claims against defendants and explaining that "[t]he jury's resolution of these fact-specific questions as to a given defendant is completely independent of its tasks in answering those questions with regard to the other defendants").

When claims fail to satisfy the same transaction or occurrence requirement, joinder is improper regardless of whether a party has satisfied the second requirement of Rule 20(a)(2) that the claims involve a common question of fact or law. *See Ramos*, 2008 WL 4066250, at *4 (J. Lefkow).

Accordingly, in the alternative to dismissing the claims, Defendants respectfully request that this Court sever the claims against the Defendants.

## VIII.  <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above, Defendants respectfully request that the Court dismiss the Intervener's Complaint with prejudice.   In the alternative, Defendants respectfully request that this Court sever claims against the Defendants.

Dated: August 13, 2014                             MORGAN, LEWIS & BOCKIUS LLP

By:  <u>/s/ Tinos Diamantatos</u>
      Scott T. Schutte
      Tinos Diamantatos
      Megan R. Braden
      MORGAN, LEWIS & BOCKIUS LLP
      77 West Wacker Drive
      Chicago, IL 60601
      Tel.: (312) 324-1000
      Email: sschutte@morganlewis.com
      tdiamantatos@morganlewis.com
      mbraden@morganlewis.com

      Scott A. Memmott
      Howard J. Young
      Holly C. Barker
      MORGAN, LEWIS & BOCKIUS LLP
      1111 Pennsylvania Avenue, NW
      Washington, DC 20004
      Tel.: (202) 739-3000
      Email: smemmott@morganlewis.com
      hyoung@morganlewis.com
      hbarker@morganlewis.com

      *Attorneys for Defendants*

16

## CERTIFICATE OF SERVICE

I, Tinos Diamantatos, an attorney, do hereby certify that on August 13, 2014, I electronically filed the foregoing document using the electronic case filing system, which will send electronic notification of such filing to all parties that have appeared in this action including:

Eric S. Pruitt
United States Attorney's Office
219 South Dearborn Street, Suite 500
Chicago, IL 60604
(312) 353-5496
Email: eric.pruitt@usdoj.gov

David Joel Chizewer
Goldberg Kohn Ltd.
Mid-Continental Plaza
55 East Monroe Street #3300
Chicago, IL 60603
(312) 201-4000
Email: david.chizewer@goldbergkohn.com

Frederick H. Cohen
Goldberg Kohn Ltd.
Mid-Continental Plaza
55 East Monroe Street #3300
Chicago, IL 60603
(312) 201-4000
Email: frederick.cohen@goldbergkohn.com

Matthew K. Organ
Goldberg Kohn Ltd.
Mid-Continental Plaza
55 East Monroe Street #3300
Chicago, IL 60603
(312) 201-4000
Email: matthew.organ@goldbergkohn.com

I caused a copy to be served via U.S. Mail on the following:

Heather A. Tullio
Assistant Attorney General
Medicaid Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph Street, 12th Floor
Chicago, IL 60601

Elizabeth Rinaldo
U.S. Department of Justice
Patrick Henry Building
601 D Street, Room 9134
Washington, D.C. 20530

James Apostolico
Deputy Attorney General
Delaware MFCU
820 North French Street, 5th Floor
Wilmington, DE 19801

Brian V. Frankel
Supervising Deputy Attorney General
California MFCU
1455 Frazee Road, Suite 315
San Diego, CA 92108

Elizabeth White
Assistant Attorney General
Georgia MFCU
2800 Piedmont Avenue S.E.
West Tower, 19th Floor
Atlanta, GA 30334

Gretchen Wallace
Senior Assistant Attorney General
Florida MFCU
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399

17

Jeff Schroder
Assistant Attorney General
Michigan MFCU
Office of the Attorney General
PO Box 30218
Lansing, MI  48909

Robert Patten
Assistant Attorney General
Massachusetts MFCU
One Ashburton Place, Room 1813
Boston, MA  02108

Karin Eckel
Director
New Hampshire MFCU
33 Capital Street
Concord, NH  03301

Mark N. Kemberling
Director
Nevada MFCU
555 East Washington Avenue, Suite 3900
Las Vegas, NV  89101

Niki S. Batt
Assistant Attorney General
Oklahoma MFCU
313 NE 21st Street
Oklahoma City, OK  73105

Joshua Lichtblau
Assistant Attorney General
New Jersey MFCU
P.O. Box 085
Trenton, NJ  08625-0085

Susan J. Arenella
Assistant Attorney General
Civil Medicaid Fraud Division
Texas Office of the Attorney General
PO Box 12548
Austin, TX  78711

Valerie Smith
Staff Attorney/Special Agent
Tennessee MFCU
901 R.S. Gass Blvd.
Nashville, TN  37216

/s/ Tinos Diamantatos
Tinos Diamantatos