IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) | |
| BIJAN OUGHATIYAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 09 CV 5418 |
| v. ) | |
| ) | Honorable Joan H. Lefkow |
| IPC THE HOSPITALIST COMPANY, INC., a ) | |
| California corporation; *et al.*; ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER CLAIMS AGAINST THE DEFENDANTS**

The Intervener's Response to Defendants' Motion[1] ("Response" or "Resp.") demonstrates why the Motion should be granted.

*First*, the Intervener does not even attempt to respond to Defendants' argument that the Complaint should be dismissed to the extent it relates to the non-Medicare government payors (specifically, Medicaid, the Tricare Management Agency, the Federal Employees Health Benefits Program, and the Railroad Retirement Board). As Defendants pointed out in their Motion (at p. 10), the Complaint – while purporting to sweep in allegedly false claims submitted to the non-Medicare government payors (*see, e.g.*, Compl. at ¶¶ 1, 5) – includes *only* allegations about claims submitted to Medicare, and *not a single* factual allegation relating to non-Medicare government payors. By failing to even respond to Defendants' argument, the Intervener concedes this point. Accordingly, at a minimum, Defendants' Motion should be granted as to claims submitted to non-Medicare government payors.

---

[1] Capitalized terms have the meanings assigned to them in the "Memorandum Of Law In Support Of Defendants' Joint Motion To Dismiss Or, In the Alternative, To Sever Claims Against the Defendants," dated August 13, 2014 ("Motion" or "Mot.").

1

*Second*, in continuing to push its improper "everyone did everything" approach to False Claims Act ("FCA") pleading, the Intervener ignores a key point of Defendants' Motion (and the Intervener's Complaint): the Intervener is attempting to hold each of the 30 separate and legally distinct Defendants *jointly and severally liable* for the actions of each of the other entities. *See* Compl. at ¶¶ 247, 250. As Defendants argued in their Motion (at p. 12), the Intervener's complete failure to allege conduct specific to each Defendant is especially improper here because the Intervener's theory of joint and several liability has embedded assumptions about the relationship between and among the entities that is wholly inconsistent with the remainder of the Intervener's arguments.

The Intervener apparently hopes to hide these glaring omissions by filing a Response long on rhetoric (not to mention new allegations and documents outside the four corners of the Complaint)[2] and short on relevant case law. As set forth below, the Intervener misconstrues governing Seventh Circuit precedent and relies on implied (but unpled) conspiracy arguments to try to salvage a Complaint that fails to plead with the specificity required by Rule 9(b). Simply put, under controlling Seventh Circuit precedent, the Intervener is required to plead the "the who, what, when, where, and how" of the alleged fraud as to the named Defendants. Because the Intervener fails to do so, the Complaint should be dismissed.

---

[2] Notably, the Intervener attaches over 300 pages of documents to its Response in an improper attempt to bolster its pleading by relying on materials outside the four corners of the Complaint. *See* Dkt. Nos. 57-1 and 57-2. Exhibit B to the Intervener's Response is a chart that the Intervener apparently prepared to "demonstrate the connection among" 21 of the 29 Defendants listed in the chart. *See* Resp. at p. 3 n.2. The Intervener cites no authority whatsoever to support its claim that the Court may consider the Intervener's chart in the context of a motion to dismiss. Indeed, to the extent that such information is necessary for the Intervener's Complaint to withstand a motion to dismiss, the Intervener should have pled this information in its Complaint. A motion to dismiss challenges the sufficiency of the pleadings, and "the Court's consideration of matters outside the pleadings is not generally permitted." *FDIC v. Pantazelos*, No. 13 C 2246, 2013 WL 4734010, at *3 (N.D. Ill. Sept. 3, 2013) (internal quotation marks omitted), attached as Exh. A hereto.

## I. THE INTERVENER'S FCA ALLEGATIONS RELATING TO CLAIMS SUBMITTED TO NON-MEDICARE GOVERNMENT PAYORS SHOULD BE DISMISSED

The Intervener's Complaint identifies four non-Medicare government payors, but it does not plead *any* facts related to claims submitted to any of these payors. *See* Mot. at p. 10. Indeed, the Intervener's Complaint mentions the non-Medicare government payors in a handful of paragraphs that amount to nothing more than superficial background on Medicaid, TRICARE, FEHBP, and the RRB generally. *See* Compl. at ¶¶ 1, 5, 14, 57-64. Similarly, while the Complaint makes a passing reference to "federal payors" utilizing CPT codes, the Intervener does not allege that the non-Medicare government payors utilize the same CPT codes and standards as Medicare, or even explain how the standards are different, if at all, across the various payors identified in the Complaint. The Intervener then concludes that "[s]ince 2003, IPC has submitted and/or caused the submission of claims for inpatient services purportedly provided to [Medicaid, TRICARE, FEHBP, and RRB] beneficiaries." *Id.* at ¶¶ 58, 60, 62, and 64. However, the Complaint fails to identify a single allegedly false claim made to any of these or other non-Medicare government payors by any one of the 30 Defendants.

The Intervener does not dispute in its Response, and thus concedes, that it has not pled any facts whatsoever with respect to the non-Medicare government payors. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *see also Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("[W]hen presented with a motion to dismiss, the non-moving party

must proffer some legal basis to support his cause of action.") (internal quotation marks omitted)).

Accordingly, the claims relating to the non-Medicare government payors should be dismissed.[3]

## II. THE INTERVENER HAS NOT MET THE REQUIREMENTS OF RULE 9(b)

Defendants established in their Motion that the Complaint improperly lumps 30 unique Defendants into one undifferentiated mass and does not provide information to identify three of the fundamental elements of pleading under Rule 9(b) – *who* submitted the allegedly fraudulent claims, *how* the allegedly fraudulent claims were submitted, and *where* the allegedly fraudulent claims were submitted. If anything, the Intervener's efforts in its Response to salvage its inadequately pled Complaint highlight why Defendants' Motion should be granted.

### A. The Intervener Improperly Fails to Differentiate Among 30 Distinct Defendants.

As Defendants explained in their Motion, the Intervener's Complaint is devoid of any facts about the actions of any individual Defendant and instead simply lumps all Defendants together as "IPC." Compl. at ¶ 5 (defining "IPC" as "IPC The Hospitalist Company, Inc. and its affiliates and subsidiaries named below (collectively, IPC)"). The *only* specific allegation with respect to 29 of the 30 Defendants is that they are "subsidiar[ies] of IPC The Hospitalist Company, Inc." *Id.* at ¶¶ 17-45. Indeed, the Complaint uses the term "IPC" to refer collectively to these distinct, separately Medicare-enrolled, and locally managed entities without attributing any of the allegedly wrongful conduct to any particular Defendant.

The Intervener effectively concedes this point in its Response, but attempts to correct this pleading deficiency by purporting to amend the Complaint via the Response. Now, the

---

[3] Incidentally, on December 3, 2013, the thirteen putative state plaintiffs, including Illinois, notified this Court of their decision to decline to intervene in this action. *See* Dkt. No. 19.

Intervener argues that IPC the Hospitalist Company, Inc. will be referred to as "IPC" (Resp. at p. 1) and the "remaining Defendants – IPC's wholly-owned subsidiaries or its affiliated professional organizations"[4] – will be referred to as the "IPC Subsidiaries." *Id.* at pp. 2-3. The Response further defines the "Defendants" as "IPC" and the "IPC Subsidiaries." *Id.* at p. 3. Of course, this new approach cannot be squared with the Complaint itself, which lumps all 30 Defendants together as "IPC." If nothing else, this Court should require the Intervener to re-plead to clarify who the Intervener is alleging did what, so that Defendants (however that term is ultimately defined) may provide a coherent response to each allegation in the Complaint. After all, this case is convoluted enough without requiring the Court and Defendants to have to read the Complaint as being amended by the Response.

    The problems with the Intervener's shotgun approach are accentuated by the fact that the Intervener intends to try to hold each separate and distinct Defendant *jointly and severally liable* for the actions of each other Defendant. *See* Compl. at ¶¶ 247, 250. The Intervener does not address (and therefore concedes) Defendants' argument that the Intervener cannot proceed with legal theories (Counts I and II) seeking to hold each of the 30 separate Defendants jointly and severally liable for the actions of the other Defendants without explaining why *each entity* should be exposed to such potentially significant and crippling damages. For this reason, too, the Complaint should be dismissed.

    The Intervener does argue that the Complaint sufficiently alleges the "***who***" of the allegedly fraudulent scheme (*i.e.*, which Defendant actually submitted the false claims) because "the Complaint explains that IPC — as opposed to the IPC Subsidiaries — provides all of its affiliated hospitalists with 'billing and collection services' . . . ." *See* Resp. at p. 7 (citing Compl.

---

[4] Notably, the phrase "affiliated professional organizations" does not appear in the Complaint, and the identity of these "affiliated professional organizations" is nowhere identified in the Complaint or the Response.

at ¶¶ 68, 75). Actually, the Complaint does not "explain" this at all; paragraphs 68 and 75 of the Complaint refer to "IPC," which the Complaint defined as "IPC The Hospitalist Company, Inc. and its affiliates and subsidiaries named below." *See* Compl. at ¶ 5.

At any rate, the Intervener apparently expects this Court and Defendants to interpret the Complaint in light of the new definitions that the Intervener has provided in its Response.[5] Based on the Intervener's new definitions of "IPC," "IPC Subsidiaries," and "Defendants," Defendants are now uncertain whether the Intervener even intended to allege Count I against all 30 Defendants, or just solely against Defendant IPC the Hospitalist Company, Inc. *Compare* Compl. Count I at ¶ 245 ("***IPC*** knowingly presented, or caused to be presented, directly or indirectly, false and fraudulent claims for payment or approval to the United States, including claims for payment in amounts that were falsely inflated or exaggerated") (emphasis added) *with* Compl. Count II at ¶ 249 ("***Defendants*** knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act . . .") (emphasis added).

In addition to all these definitional problems, the Intervener's "everyone did everything" argument (Resp. at p. 8) is fundamentally flawed. To the extent the Intervener's scattershot allegations can be interpreted as implying that there was some sort of collective action by the Defendants, the Complaint must be dismissed because the Intervener did not – and could not, for that matter – allege that the 30 Defendants conspired together to violate the FCA,[6] as the Intervener alleges that 29 of the 30 Defendants are subsidiaries of defendant IPC The Hospitalist

---

[5] In another improper sleight of hand, the Intervener cites in its Response to Complaint paragraphs 108-109 (Resp. at p. 6) to support the notion that "IPC's corporate officers" had knowledge of the alleged disparity in the use of certain CPT codes. But there is no overlap between the individuals identified with this "knowledge" (*see* Compl. at ¶ 109) and the "corporate officers" identified in the chart that the Intervener created and (improperly) attached as Exhibit B to its Response.

[6] *See* Compl. Counts I and II alleging violations of 39 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). The Complaint does not allege violations of the FCA's conspiracy provision, 39 U.S.C. § 3729(a)(1)(C).

Company, Inc. *See* Compl. at ¶¶ 16-45. Again, this is the only specific allegation against these 29 Defendants. Taking the allegations in the Complaint as true for purposes of this Motion, the Intervener has thus alleged that 29 Defendants acted at the direction and control of their parent corporation, IPC The Hospitalist Company, Inc. However, it is well established under Illinois law that a conspiracy cannot exist between an agent and its principal. *Saleymeh v. InterQual, Inc.*, 508 N.E.2d 1155, 1158 (Ill. App. Ct. 1987). This rule extends to acts of a parent and its subsidiary corporations. *See, e.g.*, *E. St. Louis Sch. Dist. 189 v. Aramark Corp.*, No. 01-CV-0457-DRH, 2001 WL 1803663, at *2 (S.D. Ill. Nov. 20, 2001), attached as Exh. B hereto (holding plaintiff failed to state a claim for civil conspiracy because allegations that parties have the relationship of parent and subsidiary, employees of the subsidiary, and agents of the parent "make the parties one in the same for the purpose of civil conspiracy" and "a civil conspiracy must involve two or more parties"); *see also United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999) ("The FCA provides for conspiracy claims, *see* 31 U.S.C. § 3729(a)(3), and general civil conspiracy principles apply."). Accordingly, even the Intervener's implied but unpled conspiracy arguments cannot lawfully state claims against 29 of the 30 Defendants.

Furthermore, "[a] corporate parent is not automatically liable for torts committed by its subsidiary." *United States v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007). Although the Intervener implies that Defendant IPC The Hospitalist Company, Inc. could be held liable for the conduct of the 29 other Defendants in this case, the Intervener has pled no facts to support a theory that it may pierce the corporate veil in this case. *See, e.g.*, *id.* (dismissing claims against corporate parent, Johnson & Johnson, for failure to plead

facts to support a "piercing the corporate veil" theory). Such an approach would be particularly inappropriate in an FCA case, which requires a showing of scienter for each of the Defendants.

Indeed, the Intervener's next argument – that it is appropriate to treat all 30 Defendants in this case as a single entity due to Defendants' corporate structure (Resp. at p. 8) – recently was expressly rejected in *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 WL 3583980 (N.D. Ill. July 18, 2014), attached as Exh. C hereto. In *Dolan*, the *qui tam* relator alleged "a multifaceted and far-reaching fraudulent scheme" that allegedly was carried out by 13 entities, all but one of which shared corporate ownership and management, and three individuals. 2014 WL 3583980, at *1 & n.1. The relator's assertions in *Dolan* included, *inter alia*, that defendants "upcoded" their services. *Id*. at *2. In dismissing the relator's complaint and rejecting the relator's argument that it had met its pleading burden under *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), the *Dolan* court explained the following:

> [T]he [First Amended Complaint] lumps defendants together – intentionally, as relator explains in his response to defendants' motions – apparently on the assumption that common corporate ownership of the [skilled nursing facilities] means that the wrongful conduct relator observed at [one defendant's location] must have been committed by each of them. But relator is not entitled to embark on a fishing expedition against thirteen entities . . . based on the fraud he claims to have witnessed as an employee of one of them.

*Id*. at *6 (citing *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994)).

The same is true here. Even if the Intervener had properly alleged that one or even several of the 30 Defendants knowingly submitted allegedly fraudulent claims, the Intervener cannot impute this same allegation – and certainly not knowledge – to the other Defendants based solely on common corporate ownership. *See also United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 897 (N.D. Ill. 2009) (finding that relator

8

"fail[ed] to differentiate among Northshore and the other individuals mentioned and fail[ed] to plead each Defendants [sic] role in the fraud, including but not limited to who submitted the false claim").

### B. The Intervener Does Not Plead the Required Specifics About the "How" of the Claims Allegedly at Issue in This Lawsuit.

With respect to "*how*" the allegedly fraudulent claims were submitted, the Intervener falls back on the erroneous claim that it need not link its allegations regarding upcoding with any actual claim for payment. *See* Resp. at pp. 10-12. Specifically, the Intervener argues that it need not identify every allegedly fraudulent claim at issue in the Complaint, asserting that its allegations regarding just "15 separate upcoded claims" (Resp. at p. 11), combined with "a plausible inference that Defendants – which obtain more than 50 percent of their revenues from Federal Payors – caused at least some upcoded claims to be submitted to Federal Payors," (*id*. at pp. 11-12) are sufficient to meet the particularity requirement of Rule 9(b) with respect to *all* claims submitted to *all* government payors by all Defendants. The Intervener is, in a word, wrong.

"The *sine qua non* of a False Claims Act violation is the submission of a fraudulent claim." *Mason v. Medline Indus., Inc.*, No. 07 C 5615, 2009 WL 1438096, at *4 (N.D. Ill. May 22, 2009), attached as Exh. D hereto (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). To properly and adequately assert a claim, it is incumbent upon the Intervener to plead, with specificity, the submission of false or fraudulent claims.

The Intervener's reliance on *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), for its argument that it need not allege any false claims with particularity is misplaced. In *Lusby*, the allegedly false statements related to whether engines that defendant

9

Rolls-Royce sold to the government met certain specifications. 570 F.3d at 853-54. In considering whether the complaint alleged fraud with particularity – "the who, what, when, where, and how: the first paragraph of any newspaper story" – the Seventh Circuit explained the following:

> [The relator] contends that Rolls-Royce defrauded the United States about the quality of the turbine blades in the T56 engine. The complaint alleges that five contracts between Rolls-Royce and the United States require all of the engine's parts to meet particular specifications; that the parts did not do so (and the complaint describes tests said to prove this deficiency); that Rolls-Royce knew that the parts were non-compliant (not only because [the relator] told his supervisors this but also because audits by Rolls-Royce's design and quality-assurance departments confirmed [the relator's] conclusions); and that Rolls-Royce nonetheless certified that the parts met the contracts' specifications. The complaint names specific parts shipped on specific dates, and it relates details of payment. Simple breach of contract is not fraud, but making a promise while planning not to keep it *is* fraud, and this complaint alleges the promise, the intent not to keep that promise, and the details of non-conformity.

*Id*. at 853-854 (citation omitted). It was under these circumstances that the Seventh Circuit concluded that it was not "essential for [the] relator [in *Lusby*] to produce the invoices (and accompanying representation) at the outset of the suit" and explained that the relator did not have access to this paperwork. *Id*. at 854.

The Seventh Circuit in *Lusby* did not, as the Intervener appears to contend, dispense with the requirement that it is essential to show a false statement in pleading a FCA case. Rather, the Seventh Circuit concluded that it could infer under the specific circumstances that the defendant in *Lusby* had submitted invoices that the court could then reasonably conclude contained a false statement because the same certification as to the quality of the products appeared on each invoice and the relator had alleged that *all* of the parts were substandard.

Here, by contrast, the Intervener alleges that certain claims were factually false, but does not allege that *all* claims were false. In other words, the Intervener alleges that all 30 of the

10

Defendants would specifically identify – and charge for – providing a certain level of service that was not in fact provided. In that regard, the allegations in this case suffer from the same flaw that doomed the relators' complaint in *United States ex rel. Fowler v. Caremark RX L.L.C.*, 496 F.3d 730 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). In *Fowler*, the district court found that relators' second amended complaint, which consisted of 514 paragraphs spanning over 178 pages and an additional 1,000 pages of exhibits, did not meet the heightened pleading requirements of Rule 9(b) and refused the relators' request for leave to file a third amended complaint. 496 F.3d at 734. Specifically, despite the length, the district court found that "notice [sufficient to satisfy Rule 9(b)] is woefully inadequate where, as here, plaintiffs allege only *generalized schemes* . . ." No. Civ.A. 03C8714, 2006 WL 2425331, at *7 (N.D. Ill. Aug. 21, 2006), attached at Exh. E hereto.

The Seventh Circuit upheld the dismissal, explaining that the relators "do not present any evidence *at an individualized transaction level* . . ." *Fowler*, 496 F.3d at 741-42. As the Seventh Circuit explained, "the core" of the relators' pleading failure was "caused by their misunderstanding of what is required to bring a cause of action under §§ 3729(a)(1) and (a)(2). Both sections require a false claim or statement *and knowledge that the claim or statement is false.*" *Id*. at 742 (emphasis added). With respect to the defendant's knowledge, the Seventh Circuit explained that "the 'scheme' as currently alleged by the [r]elators merely rises to a breach of contract dispute." *Id*. at 743. Specifically, the relators' position, "permeating throughout this entire case, is effectively that any allegedly inaccurate claim is by definition a false claim. This standard would transform every inaccurate claim into a false claim and consequently replace the Act's knowledge requirement with a strict liability standard." *Id*.

11

Here, the Complaint does not allege enough facts to infer how each of the 30 Defendants submitted false claims to government payors. The Complaint references "billing records" of certain hospitalists, but it fails to allege specific claims that arose out of these billing practices. *See* Compl. at ¶¶ 118-132. Such allegations do not meet the heightened pleading standard under Rule 9(b). Nor are they specific enough to allow the court to make a "plausible inference" as to how the claims were submitted. *See Lusby*, 570 F.3d at 854. Due to this pleading deficiency, the court should dismiss the claims against Defendants involving the submission of allegedly false claims.

### C. The Intervener Does Not Plead the Required Specifics About the "Where" of the Claims Allegedly at Issue in This Lawsuit.

With respect to "*where*" the allegedly fraudulent claims were submitted, the Intervener improperly attempts to shift the burden to Defendants to ascertain where the allegedly false claims originated. The Intervener also argues, without any support from the Seventh Circuit or the Northern District of Illinois, that its allegations regarding "15 representative false claims" from services allegedly rendered in seven states (Resp. at p. 13) is sufficient to meet the particularity requirement of Rule 9(b) with respect to all 30 Defendants with locations in 25 states.[7] The Intervener's arguments should be rejected for the same reasons identified in Section II.B.

### III. IN THE ALTERNATIVE, THE INTERVENER'S CLAIMS AGAINST DEFENDANTS SHOULD BE SEVERED

In the alternative to dismissing the Intervener's Complaint, Defendants respectfully request that this Court sever claims against the Defendants pursuant to Federal Rule of Civil Procedure 21 because the Defendants are improperly joined. In order to prevail against each

---

[7] Indeed, one of the "representative false claims" is from Massachusetts, but there is not a Massachusetts entity named as a Defendant in this case.

Defendant, the Intervener must demonstrate that each Defendant had the requisite scienter, *i.e.,* that each Defendant had actual knowledge of the allegedly false information or acted in deliberate ignorance or reckless disregard of the truth or falsity of the information. 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(b)(1)(A)(i-iii).

The Response fails to articulate a basis for the Intervener's allegation that *each separate Defendant* individually submitted false claims, let alone that each had the requisite scienter to be held jointly and severally liable for the actions of each of the other Defendants. *See* Compl. at ¶¶ 244-250 (seeking that "Defendants" be held "jointly and severally liable" for "knowingly" making false claims and/or statements). As noted above in the discussion of *Dolan* (*see supra* p. 8), the Intervener cannot rely solely on shared corporate management to impute knowledge to each of the individual Defendants.[8]

The inquiry into each Defendant's scienter necessarily will involve an investigation into each of the Defendant's records and claims. Given how billing codes are selected by individual hospitalists employed by the various Defendants, the resolution of one Defendant's knowledge is entirely independent of the inquiry into another Defendant's records and claims and the resolution of every other Defendant's knowledge. Accordingly, in the alternative to dismissing the claims, Defendants respectfully request that this Court sever the claims against the Defendants.

---

[8] Furthermore, there is no overlap in names between the correspondence cited in the Complaint that allegedly shows that "corporate officers agreed not to publicly discuss IPC's billing rate," and therefore had knowledge, and the individuals identified in Exhibit B to the Intervener's Response. *See* Compl. at ¶ 109.

## IV. CONCLUSION

WHEREFORE, for the reasons set forth above and for the reasons set forth in Defendants' Motion, Defendants respectfully request that this Court dismiss the Intervener's Complaint. In the alternative, Defendants respectfully request that this Court sever the claims against the Defendants.

Dated: September 25, 2014 

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Tinos Diamantatos
　　Scott T. Schutte
　　Tinos Diamantatos
　　Megan R. Braden
　　MORGAN, LEWIS & BOCKIUS LLP
　　77 West Wacker Drive
　　Chicago, IL 60601
　　Tel.: (312) 324-1000
　　Email: sschutte@morganlewis.com
　　tdiamantatos@morganlewis.com
　　mbraden@morganlewis.com

　　Scott A. Memmott
　　Howard J. Young
　　Holly C. Barker
　　MORGAN, LEWIS & BOCKIUS LLP
　　1111 Pennsylvania Avenue, NW
　　Washington, DC 20004
　　Tel.: (202) 739-3000
　　Email: smemmott@morganlewis.com
　　hyoung@morganlewis.com
　　hbarker@morganlewis.com

　　*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Tinos Diamantatos, an attorney, do hereby certify that on September 25, 2014, I electronically filed the foregoing document using the electronic case filing system, which will send electronic notification of such filing to all parties that have appeared in this action including:

Eric S. Pruitt
United States Attorney's Office
219 South Dearborn Street, Suite 500
Chicago, IL 60604
(312) 353-5496
Email: eric.pruitt@usdoj.gov

David Joel Chizewer
Goldberg Kohn Ltd.
Mid-Continental Plaza
55 East Monroe Street #3300
Chicago, IL 60603
(312) 201-4000
Email: david.chizewer@goldbergkohn.com

Frederick H. Cohen
Goldberg Kohn Ltd.
Mid-Continental Plaza
55 East Monroe Street #3300
Chicago, IL 60603
(312) 201-4000
Email: frederick.cohen@goldbergkohn.com

Matthew K. Organ
Goldberg Kohn Ltd.
Mid-Continental Plaza
55 East Monroe Street #3300
Chicago, IL 60603
(312) 201-4000
Email: matthew.organ@goldbergkohn.com

I caused a copy to be served via U.S. Mail on the following:

Heather A. Tullio
Assistant Attorney General
Medicaid Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph Street, 12th Floor
Chicago, IL 60601

Elizabeth Rinaldo
U.S. Department of Justice
Patrick Henry Building
601 D Street, Room 9134
Washington, D.C. 20530

James Apostolico
Deputy Attorney General
Delaware MFCU
820 North French Street, 5th Floor
Wilmington, DE 19801

Brian V. Frankel
Supervising Deputy Attorney General
California MFCU
1455 Frazee Road, Suite 315
San Diego, CA 92108

Elizabeth White
Assistant Attorney General
Georgia MFCU
2800 Piedmont Avenue S.E.
West Tower, 19th Floor
Atlanta, GA 30334

Gretchen Wallace
Senior Assistant Attorney General
Florida MFCU
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399

| | |
|---|---|
| Jeff Schroder<br>Assistant Attorney General<br>Michigan MFCU<br>Office of the Attorney General<br>PO Box 30218<br>Lansing, MI  48909 | Robert Patten<br>Assistant Attorney General<br>Massachusetts MFCU<br>One Ashburton Place, Room 1813<br>Boston, MA  02108 |
| Karin Eckel<br>Director<br>New Hampshire MFCU<br>33 Capital Street<br>Concord, NH  03301 | Mark N. Kemberling<br>Director<br>Nevada MFCU<br>555 East Washington Avenue, Suite 3900<br>Las Vegas, NV  89101 |
| Niki S. Batt<br>Assistant Attorney General<br>Oklahoma MFCU<br>313 NE 21st Street<br>Oklahoma City, OK  73105 | Joshua Lichtblau<br>Assistant Attorney General<br>New Jersey MFCU<br>P.O. Box 085<br>Trenton, NJ  08625-0085 |
| Susan J. Arenella<br>Assistant Attorney General<br>Civil Medicaid Fraud Division<br>Texas Office of the Attorney General<br>PO Box 12548<br>Austin, TX  78711 | Valerie Smith<br>Staff Attorney/Special Agent<br>Tennessee MFCU<br>901 R.S. Gass Blvd.<br>Nashville, TN  37216 |

                                                  /s/ Tinos Diamantatos
                                                  Tinos Diamantatos