# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, ex rel. Bijan Oughatiyan,     Plaintiffs, <br><br> v. <br><br> IPC The Hospitalist Company, Inc. et al.,     Defendants. | No. 09 C 5418 <br><br> District Judge Joan H. Lefkow <br><br> Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

For the reasons discussed in this order, plaintiff United States' Motion to Strike General Objections and Compel Responses to Discovery Requests [dkt 76] is granted in part and denied in part without prejudice.

### Background

Plaintiff relator Bijan Oughatiyan, who worked for defendant IPC The Hospitalist Company, Inc. ("IPC") from 2003 to 2008, brought this case under the False Claims Act. (Compl.) [Dkt 1.] In December 2013, the United States filed an election to intervene [dkt 20], and in June 2014, filed a Complaint in Intervention (U.S. Compl.) [dkt 48]. The government's complaint alleges that from January 1, 2003 to the present, IPC and its subsidiaries and affiliates knowingly billed government payors, including Medicare and Medicaid, for higher and more expensive levels of medical services than were actually performed. (U.S. Compl. ¶ 5.) The government's complaint named IPC and 29

subsidiaries and affiliated medical groups operating in 25 states (*id*. ¶¶ 16-45), and alleged that IPC provides all of the non-medical administrative and management services, including billing services, necessary for the operations of each of its subsidiaries and affiliates pursuant to management agreements (*id*. ¶ 16).

The defendants filed a joint motion to dismiss all claims in August 2014. (Mot. to Dismiss.) [Dkt 50.] The District Judge concluded that the government's complaint states a claim of fraud as to IPC, but fails to state a sufficient claim of fraud against the subsidiaries and affiliated groups. (Mem. Opinion and Order, Feb. 17, 2015 at 13-15.) [Dkt 67.] The claims against the 29 subsidiaries and affiliates were dismissed without prejudice. (*Id.*)

The District Judge ordered non-expert discovery to close on January 22, 2016. (Order, April 24, 2015.) [Dkt 74.] The government served IPC with a set of document requests seeking 66 categories of documents, along with nine interrogatories, several of which have multiple subparts. (Def.'s Resp. Opp'n, Exs. A and B.) [Dkt 83.] IPC served responses and objections, objecting to each request and interrogatory to some extent, specifically or through fourteen "General Objections." (Gov't's Mem., Ex. A.) [Dkt 77.] The government has moved to strike IPC's general objections and compel responses to its discovery requests, focusing particularly on IPC's General Objections 10 and 11, concerning the temporal and geographic limitations on document production. (Gov't's Mem. at 2-3.) IPC filed a response [dkt 83], and the government replied [dkt 85].

**Current Discovery Disputes**

*Geographic Scope of Discovery Requests*

The government seeks documents pertaining to each of the locations in which IPC conducts

business. (Gov't's Mem. at 2.) In its General Objection 11, IPC objects to that scope and agrees to produce:

> documents that pertain to (1) corporate wide policies, procedures, practices or communications issued from or involving IPC ("Corporate Documents"), or (2) those geographic areas with respect to which DOJ has pled specific factual allegations, namely the states of Texas, Illinois, Michigan, Massachusetts, Tennessee, Florida, and California (the "states at issue").

(Gov't's Mem., Ex. A, Def. IPC Healthcare, Inc.'s Objections and Resp. to Pl. U.S.'s First Set Doc. Req. at 4.)

Fed. R. Civ. P. 26 (b)(1) allows discovery regarding "nonprivileged matter that is relevant to any party's claim or defense." The government contends that it has pled a nationwide case and is therefore entitled to engage in nationwide discovery. IPC argues that, although the government has alleged a nationwide scheme, the complaint contains factual allegations regarding only those seven states, and the District Judge's decision to dismiss the subsidiaries confirms that the government has stated a claim only as to IPC itself, not any of its subsidiaries. (Def.'s Resp. at 7.) IPC states that roughly half of its 2,457 hospitalists are concentrated in the seven "states at issue," while the other half furnish services outside those seven states. (*Id.* at 7-8.) Producing documents for each of the subsidiaries, it argues, would require an "extraordinary effort" unjustified by the incremental value of the information. (*Id.* at 7.) The government, on the other hand, is concerned that limiting discovery to the seven states implicitly construes the complaint as limited to those seven states going forward. (Tr. June 16, 2015 at 16-17.) [Dkt 89.]

In discussions prior to the motion hearing, the government and IPC agreed that IPC would produce documents from 80 custodians who are or were employed at the level of practice leader

3

(referred to as "pod leader") or above. (Tr. June 16, 2015 at 6.)[1] They continue to dispute whether those 80 individuals will be drawn from all of the states in which IPC has subsidiaries or from only the seven states IPC contends are "at issue." (*Id.* at 6-7.)

The government contends that all locations where IPC conducts business are "in play," based on the investigation that led it to bring the nationwide case it argues to have pled. (Tr. June 16, 2015 at 16-17; Gov't's Reply at 7.) The issue is whether that assertion alone justifies extending discovery to all states at this point. The court must consider scope of discovery expressed in Rule 26(b)(1) along with the principle of proportionality implicit in Rule 26(b)(2)(C)(iii).

An approach suggested by *U.S. ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 WL 4525226 (E.D. Pa. Aug. 27, 2013), is useful here. In *Spay*, a relator brought a claim under the False Claims Act alleging that the defendant engaged in a nationwide practice of submitting improper prescription drug claims under Medicaid and Medicare Part D. *U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125 (E.D. Pa. 2012). The court denied defendant's motion to dismiss all claims, including a nationwide FCA claim. *Id.* at 177-78. In a subsequent decision regarding discovery, the court discussed the utility of staged discovery in nationwide cases:

> On one hand, Plaintiff has clearly satisfied Rule 9(b)'s pleading of a nationwide claim sufficient to entitle it to enough discovery to prove that claim. Such discovery would then allow Plaintiff to fully expose the scope of any fraudulent scheme by Defendants. One the other hand, the Court remains mindful of the fact that Defendants are national companies that have acted as PBMs for over thirty Part D Plan sponsors nationwide, covering millions of lives and processing millions of prescription claims. The cost of discovery in this case could be so prohibitive as to force Defendants into a settlement based not on any assessment of the merits of the case against it, but simply to avoid the undue burden associated with what could potentially be a mere fishing expedition. Such a result is not desirable and does not

---

[1] "Pod leaders" manage the practicing hospitalists at the individual hospitals. (Tr. June 16, 2015 at 6.)

satisfy the ends of justice.

*Spay*, 2013 WL 4525226 at *7. The court was persuaded by several other jurisdictions that used preliminarily staged discovery. "In similar situations, where nationwide discovery would be either overbearing or cost-prohibitive, some courts have provided an initial period of limited discovery to regions in which specific false claims had been alleged, while reserving for a later date broader nationwide discovery on claims that were supported only by reasonable inferences drawn from the allegations of the complaint." *Id.* (collecting cases). The court concluded that discovery would start with the six jurisdictions as to which the relator-plaintiff had put forth examples of false claims, and based on what that discovery showed, the plaintiff could later move for broader nationwide discovery. *Id.*

This court agrees that staged discovery is the way to move discovery forward in this case. Staged discovery allows what is learned in the first stage to inform and refine any further discovery. It limits the burden for both parties on producing and reviewing discovery, and ultimately allows parties to maximize their return on the investment they are making in the discovery process. As an initial step, IPC will produce the documents it has agreed to produce, that is, IPC corporate documents and documents from the following seven states: Texas, Illinois, Michigan, Massachusetts, Tennessee, Florida, and California. Should this first stage of discovery prove fruitful and show that the an expanded geographic scope is appropriate, the government may again move to strike General Objection 11. For now, the government's motion to strike General Objection 11 is denied without prejudice.

The 80 custodians at the "pod leader" level and above will also be drawn from those seven states. Searching the electronically stored information (ESI) of 80 individuals from as many as 28

different states is not an equivalent burden to searching the ESI of 80 individuals in seven states because of the additional cost of accessing different systems in the different subsidiaries. At this stage, that additional cost is not justified.

*Temporal Scope of Discovery Requests*

The government's complaint claimed that "[f]rom January 1, 2003, through the present . . . IPC . . . knowingly and systematically billed . . . for higher and more expensive levels of medical services than were actually performed." (U.S. Compl. ¶ 5.) Its document requests sought documents for the "Relevant Time Period" defined as January 1, 2003 to the present. (Def.'s Resp. Opp'n, Ex. A at 2.) IPC's General Objection 10 objects to the temporal scope of the government's requests because, IPC asserts, the allegations contained in the government's complaint are based on data, medical records, and information related to IPC's operations from January 1, 2003 to December 31, 2010, with no specific factual allegations beyond that point. (Gov't's Mem., Ex. A at 3-4.)

Discovery in a False Claims Act case is not a "roving commission to investigate all financial dealings of the defendants." *U.S. ex rel. Grandeau v. Cancer Treatment Ctrs. Of Am.*, No. 99 C 8287, 2003 WL 21504998 at *2 (N.D. Ill. June 30, 2003). However, that is not to say the complaint must contain all the information necessary to proceed at trial. *See e.g.*, *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) ("While Rule 9(b) stands as a hurdle preventing discovery when a complaint fails to sufficiently define its claims, it does not do away with discovery altogether by allowing access to discovery only when the complaint already contains all the information necessary to succeed at trial.").

Here, the allegations contained in the government's complaint are largely derived from data,

medical records, and information related to IPC's operations from January 1, 2003 to September 1, 2009, the date when the relator filed his complaint. (U.S. Compl. ¶¶ 118-243.) However, several allegations relate to events occurring after the relator's complaint, with the latest occurring in December 2010. (*Id.* ¶¶ 153, 157, 161.) These later allegations, read together with the "to present" language found in the United States' complaint, which the District Judge determined was sufficiently pled under Rule 9(b), (Mem. Opinion and Order, February 17, 2015 at 12), can be fairly construed to allege an ongoing wrong even after 2010.

In the parties' discussions before the hearing on the motion, the government had agreed to limit its discovery to the date of the filing of its complaint, June 16, 2014. (Gov't's Reply at 12.) This court agrees that the temporal scope of discovery requests extends from January 1, 2003 to June 16, 2014.

**Additional Discovery Matters**

At the conclusion of the hearing on the motion, the court directed the parties to prepare an agreed protocol for discovery of electronically stored information, including a protocol with respect to the 80 custodians discussed above. The parties were also urged to consider a proposed order under Fed. R. Evid. 502(d), and the alternative privilege logging protocol suggested by the Seventh Circuit Electronic Discovery Pilot Program.[2] Any motion for entry of an order relating to protocols for this stage of discovery shall be filed no later than July 31, 2015, and noticed for presentment at

---

[2] *See* Case Management Order #2, www.ilnd.uscourts.gov/home/JUDGES/BROWN/7th%20Cir%20Elec%20Discovery%20Pilot%20Pgm%20Model%20Privilege%20CMO_0.pdf

the hearing on August 5, 2015.

## CONCLUSION

Accordingly, United States' Motion to Strike General Objections [76] is granted in part and denied in part without prejudice as set out above. Any motion for entry of an order relating to discovery protocols for this stage of discovery shall be filed no later than July 31, 2015 and noticed for presentment at the hearing on August 5, 2015.

_____
Geraldine Soat Brown
United States Magistrate Judge

July 14, 2015